UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DEMETRIOS PSEUDOIKONOMOU,<br><br>Defendant | ) Criminal No. 26cr10223<br>)<br>) Violations:<br>)<br>) Counts One – Eight: Aiding,<br>) Assisting, and Procuring the<br>) Preparation and Presentation of<br>) False and Fraudulent Tax<br>) Returns<br>) (26 U.S.C. § 7206(2))<br>) |

## INDICTMENT

At all times relevant to this Indictment:

### General Allegations

1.     Defendant DEMETRIOS PSEUDOIKONOMOU lived in Belmont, Massachusetts.

2.     Between in or about 2018 and in or about 2023, PSEUDOIKONOMOU operated and controlled Lambrian Inc., d/b/a Cappy's Pizza and Subs ("Cappy's"), a restaurant in Boston, Massachusetts.

3.     During the same period, PSEUDOIKONOMOU also operated and controlled several "virtual restaurants."  These virtual restaurants used Cappy's kitchen, employees, and Employment Identification Number ("EIN"), but each one had a different name.

4.     Individual 1, a relative of PSEUDOIKONOMOU, nominally owned Cappy's and worked there preparing food, but Individual 1 did not operate and control the restaurant.

5.     Between in or about 2018 and in or about 2023, PSEUDOIKONOMOU operated and controlled Westland Trust ("Westland"), a trust that owned a six-story building in Boston, Massachusetts that included twenty apartments and three commercial spaces, including one that

1

Westland leased to Cappy's.

6.  Individual 2, a relative of PSEUDOIKONOMOU, was the trustee of Westland.

7.  Individual 1, Individual 2, and Individual 3 (another relative of PSEUDOIKONOMOU) were the beneficiaries of Westland.

8.  Accountant 1 provided tax preparation services for Cappy's and Westland as well as for PSEUDOIKONOMOU.

<u>The Internal Revenue Service and the Tax Laws of the United States</u>

9.  The Internal Revenue Service ("IRS") was an agency of the United States within the Department of the Treasury and was responsible for enforcing and administering the tax laws of the United States.

10.  In order to accurately assess and collect taxes, the IRS was required to, among other things, determine taxpayers' actual income, credits, and deductions. To accomplish its mission, the IRS used, among other means, tax returns filed pursuant to the tax laws of the United States, as set forth in Title 26 of the United States Code, including the following:

a.  <u>Individuals</u>: In general, individual taxpayers were required to report their income, any allowable deductions, and tax liability on U.S. Individual Income Tax Returns, Forms 1040 ("Forms 1040") and related IRS Schedules and Forms attached to them. Individuals could file a "Schedule C" with a Form 1040 to report income or loss from a business.

b.  <u>Corporations</u>: In general, all domestic corporations were required to file an annual income tax return, whether or not the corporation had any taxable income. Domestic corporations used U.S. Income Tax Returns for a C Corporation, Forms 1120 ("Forms 1120") to file income tax returns. C Corporations were required to pay tax on the corporations' taxable income. Profits and losses did not pass directly to shareholders.

2

c.    Trusts: In general, trusts were required to report annual income and expenses on a Form 1041, U.S. Income Tax Return for Estates and Trusts ("Form 1041"). Instead of paying federal income taxes directly, trusts passed income (or losses) through to beneficiaries to report on the beneficiaries' individual income tax returns.

11.    Annually from at least in or about 2018 through in or about 2022, PSEUDOIKONOMOU caused Cappy's to file a Form 1120 reporting the corporation's taxable income. Individual 1 signed the Forms 1120 on behalf of Cappy's.

12.    Annually, from at least in or about 2019 through in or about 2023, PSEUDOIKONOMOU caused Westland to file a Form 1041, with an attached Schedule K-1 reporting the amount of Westland's income attributable to each trust beneficiary. Individual 2 signed the Forms 1041 on behalf of Westland.

The False Corporate Tax Returns

*Cappy's*

13.    Cappy's generated both in-store and online sales. Cappy's recorded in-store sales by cash and credit card on its Point of Sale ("POS") system. Cappy's recorded online credit card sales on its POS system, but it also received checks from online sales platforms and certain large customers.

14.    PSEUDOIKONOMOU controlled several bank accounts in Cappy's name at Santander Bank, including accounts with account numbers ending in 3787 and 0270 (collectively the "Original Cappy's Accounts") and an account with an account number ending in 1047 (the "Additional Cappy's Account").

15.    PSEUDOIKONOMOU deposited gross receipts from Cappy's and its virtual restaurants' operations into the Original Cappy's Accounts, the Additional Cappy's Account,

and an account in PSEUDOIKONOMOU's name at Bank of America ("the B of A Personal Account").

16.    For tax purposes, PSEUDOIKONOMOU only provided statements to Accountant 1 for the Original Cappy's Accounts. PSEUDOIKONOMOU thereby caused Accountant 1, who relied on PSEUDOIKONOMOU to provide him with complete information, to underreport Cappy's gross receipts on the business' tax returns.

17.    For example, in or about 2022, PSEUDOIKONOMOU falsely reported to his accountant that Cappy's had only $1,483,896 in gross receipts for tax year 2021.

18.    In fact, Cappy's had an additional $121,907.50 in gross receipts that PSEUDOIKONOMOU did not disclose to Accountant 1, and that Accountant 1 did not disclose to the IRS.

19.    In total, for tax years 2019 through 2022, Cappy's earned approximately $6,188,194.93 in gross receipts.

20.    For this same period, PSEUDOIKONOMOU falsely reported to Accountant 1 that Cappy's had earned approximately $5,456,320 in gross receipts.

21.    As a result, for each of those four years, PSEUDOIKONOMOU caused Accountant 1 to prepare and file with the IRS false Forms 1120 that, taken together, underreported Cappy's gross receipts by roughly $731,874.93.

*Westland*

22.    Westland's tenants paid rent to PSEUDOIKONOMOU by personal checks and electronic transfers, including Zelle payments to the B of A Personal Account and Venmo payments to a Venmo account in his name.

4

23.    PSEUDOIKONOMOU deposited some of the rent checks in the B of A Personal Account and some of the rent checks in Westland's bank account at Rockland Trust ("the Rockland Trust Account").

24.    For tax purposes, PSEUDOIKONOMOU only provided to Accountant 1 statements for the Rockland Trust Account. These statements did not reflect rental income that PSEUDOIKONOMOU deposited into the B of A Personal Account or received by Venmo.

25.    PSEUDOIKONOMOU thereby caused Accountant 1, who relied on PSEUDOIKONOMOU to provide him with complete information, to underreport Westland's rental income on the trust's tax returns.

26.    For example, in or about 2022, PSEUDOIKONOMOU falsely reported to Accountant 1 that Westland had approximately $678,802 in rental income for the tax year 2021. PSEUDOIKONOMOU thereby failed to disclose approximately $193,976.64 in rental payments that he received by Venmo or deposited into his B of A Personal Account, which caused Accountant 1 to prepare Forms 1041 that substantially underreported Westland's rental income.

27.    In total, for tax years 2018 through 2022, Westland earned approximately $4,182,920.78 in rental income, which was reflected in the statements from the B of A Personal Account, the Rockland Trust Account, and PSEUDOIKONOMOU's Venmo account.

28.    For this same period, however, PSEUDOIKONOMOU falsely reported to Accountant 1 that Westland had earned only approximately $3,296,530 in rental income.

29.    As a result, in each of those years, PSEUDOIKONOMOU caused Accountant 1 to prepare and file with the IRS false Forms 1041 that, taken together, underreported Westland's rental income by roughly $886,390.78.

5

<u>False and Fraudulent Personal Tax Returns</u>

30.    As described above, PSEUDOIKONOMOU caused Cappy's and Westland to underreport these business' gross receipts and rental income, respectively, on tax returns. PSEUDOIKONOMOU, in turn, took this unreported income for himself and failed to disclose it to his tax preparer, Accountant 1.    As a result, PSEUDOIKONOMOU annually caused Accountant 1 to prepare Forms 1040 for PSEUDOIKONOMOU that materially underreported his income.

31.    As a result of his conduct, between in or about 2018 and in or about 2022, PSEUDOIKONOMOU deliberately avoided paying more than $525,000 in federal income taxes.

<u>The Attempted Sale of Cappy's and Westland</u>

32.    In or around January 2022, PSEUDOIKONOMOU put Cappy's up for sale.

33.    Later that month, PSEUDOIKONOMOU met with an undercover law enforcement agent ("the UCA") posing as a prospective buyer for Cappy's.

34.    During the meeting, PSEUDOIKONOMOU told the UCA that he regularly underreported Cappy's gross receipts.  PSEUDOIKONOMOU stated that "I give [Accountant 1] the printout of everything … that I want him to have…. He reports what I tell him….  You're gonna see on my returns that not everything's there."

35.    Eventually, PSEUDOIKONOMOU also began discussing a possible sale of Westland to the UCA.  In a January 2022 phone call, while explaining Westland's rental income and tax filings, PSEUDOIKONOMOU told the UCA, "I get very few checks….  I can teach you tricks, you know what I'm saying?"

36.    During a February 2022 meeting, PSEUDOIKONOMOU asked the UCA "You're not a wearing a wire, right?  You're not a cop, right?"  Later during the meeting, when

6

PSEUDOIKONOMOU saw that the UCA had two phones, PSEUDOIKONOMOU said, in substance, "Ah you work for the IRS. I'll [expletive] kill you. If you're a cop or you're trying to [expletive] me… I'm sending my people to your house."

37.     On or about August 4, 2022, the IRS executed a search warrant at Cappy's. After the search, PSEUDOIKONOMOU called the UCA and said "I can't believe you'd do that me …. You were the only one…. You [expletive] me good." PSEUDOIKONOMOU added "I just had IRS show up at my store…. You're the only one that I gave any information to."

<u>COUNTS ONE – EIGHT</u>
Aiding, Assisting, and Procuring the Preparation and Presentation
of False and Fraudulent Tax Returns
(26 U.S.C. § 7206(2))

The Grand Jury charges:

38.  The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 36 of this Indictment.

39.  On or about each of the dates set forth below, in the District of Massachusetts and elsewhere, defendant,

DEMETRIOS PSEUDOIKONOMOU,

did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation under, and in connection with matters arising under, the internal revenue laws, the federal income tax returns below, including Forms 1040, 1041, and 1120, in the names of the taxpayers listed below, for the tax years below, which were false and fraudulent as to material matters, in that the Forms 1040 falsely underreported DEMETRIOS PSEUDOIKONOMOU's income from the businesses, Cappy's and Westland, and in that the Forms 1041 and 1120 falsely underreported Cappy's gross receipts or sales and Westland's rental income, respectively.

| Count | Taxpayer | Form | Approximate Filing Date | Tax Year |
|---|---|---|---|---|
| 1 | DEMETRIOS PSEUDOIKONOMOU | 1040 | April 19, 2021 | 2020 |
| 2 | DEMETRIOS PSEUDOIKONOMOU | 1040 | April 4, 2022 | 2021 |
| 3 | DEMETRIOS PSEUDOIKONOMOU | 1040 | April 5, 2023 | 2022 |
| 4 | Lambrian Inc. | 1120 | August 1, 2021 | 2020 |
| 5 | Lambrian Inc. | 1120 | August 10, 2022 | 2021 |
| 6 | Westland Trust | 1041 | April 15, 2021 | 2020 |
| 7 | Westland Trust | 1041 | April 15, 2022 | 2021 |
| 8 | Westland Trust | 1041 | April 17, 2023 | 2022 |

All in violation of Title 26, United States Code, Section 7206(2).

A TRUE BILL



FOREPERSON

LEAH B. FOLEY
UNITED STATES ATTORNEY



BENJAMIN A. SALTZMAN
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF MASSACHUSETTS

District of Massachusetts: August __11__, 2026
Returned into the District Court by the Grand Jurors and filed.

_____/s/ Noreen A. Russo_____
DEPUTY CLERK     at 2:55 PM

9